Submitted on record and briefs December 2, 2005, affirmed May 3, 2006

Thomas Jerome RING,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Mid Valley Health Care, Inc.,
*Respondents.*

05-AB-0686; A128916

134 P3d 1096

Thomas Ring filed the brief *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Richard D. Wasserman, Attorney-In-Charge, Civil/Administrative Appeals Unit, filed the brief for respondent Employment Department.

No appearance for respondent Mid Valley Health Care, Inc.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Claimant seeks judicial review of an Employment Appeals Board (board) decision denying his claim for unemployment insurance benefits. The board, unlike both the Employment Department (department) and an administrative law judge (ALJ), concluded that, when claimant kicked a coworker, he engaged in misconduct that was not an isolated instance of poor judgment. We affirm.

A person who loses his or her job due to misconduct is not eligible for unemployment insurance benefits. ORS 657.176(2)(a). The department, as the agency responsible for administering the unemployment compensation statutes, has defined the term "misconduct" as "a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee * * *." OAR 471-030-0038(3)(a). However, the department's rules also provide that "[i]solated instances of poor judgment" are not misconduct. OAR 471-030-0038(3)(b). The issue in this case, then, is how properly to characterize the conduct that precipitated claimant's discharge. More precisely, in that the department (through the director's authorized representative) and an ALJ concluded that the conduct was an isolated instance of poor judgment, but the board concluded that it was not, the issue is which of those characterizations prevails.

The following facts are undisputed. On January 18, 2005, six days short of his 26th anniversary as a medical technologist for Mid Valley Health Care, claimant was at his work post when a coworker, H, walked through the area and sounded his beeper. Claimant found the noise annoying and told H so. In response, H sounded his beeper two more times. Claimant then walked to where H was standing and kicked him in the buttocks with the side of his right foot, which was clad, at the time, in a low-top sneaker. The kick caused H to step forward and bump into a cabinet. Walking back to his desk, claimant muttered to another coworker that he should have used the toe of his shoe instead of the side. However, a few moments later, claimant approached H and apologized. H responded that claimant should not worry about it. Later

that day, H developed a bruise and experienced increasing pain from the impact with the counter. He visited the hospital's emergency room and ultimately missed six days of work. Claimant was subsequently terminated for violating the employer's policy against workplace violence. Although he had been disciplined once before, in 2000, for threatening to inflict a paper cut under the nose of a coworker who had annoyed him, the kicking incident was claimant's first episode of workplace violence.

After being terminated, claimant applied for unemployment insurance benefits. The department's authorized representative, noting that "[e]mployer's representative did not respond to attempt[s] for additional information," ruled that the kick was an isolated instance of poor judgment and that claimant was therefore eligible for benefits. Employer appealed, and a hearing took place before an ALJ from the Office of Administrative Hearings. Claimant appeared without representation; employer was represented. The ALJ affirmed the authorized representative's decision, ruling that the discharge resulted from an isolated instance of poor judgment. The ALJ found:

> "[C]laimant ha[s] not engaged in a physical act of violence before; he had only made an idle threat, and the two incidents [that is, the threat and the kicking incident] occurred several years apart, which does not establish a repeated or on-going pattern of behavior. Furthermore, [ ] the record is not persuasive that claimant committed the crime of assault. Therefore, while the employer may have had a legitimate business reason to discharge claimant, the discharge was not for misconduct that would disqualify him from receiving unemployment insurance benefits."

The reference to "the crime of assault" was important because, under department rules, "[a]cts that violate the law" and "acts that are tantamount to unlawful conduct" are *per se* misconduct and not isolated instances of misconduct. OAR 471-030-0038(1)(d)(D).

Employer appealed to the board. Based exclusively on the record developed before the ALJ, the board reversed. Although it agreed with the ALJ's conclusion that claimant's conduct was an isolated incident, it concluded that

"some acts are too serious to be considered mere poor judgment, including unlawful acts [and] acts that are tantamount to unlawful acts * * *. We are persuaded that claimant's behavior in this instance was tantamount to illegal conduct, *i.e.*, assault."

The board therefore concluded that "[c]laimant is disqualified from receiving unemployment insurance benefits."

██     The decision whether a particular act or series of acts is misconduct or, on the other hand, merely an isolated instance of poor judgment, involves interpretation of OAR 471-030-0038(3)(b) (isolated instance of poor judgment is not misconduct); it is therefore a question of law. *McPherson v. Employment Division*, 285 Or 541, 550, 591 P2d 1381 (1979). As the Supreme Court and this court have held, however, the department's interpretation receives deference unless it is implausible, that is, inconsistent with the rule's text, context, or any other source of law. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994); *Johnson v. Employment Dept.*, 189 Or App 243, 248, 74 P3d 1159 (*Johnson II*), adh'd to as modified on recons, 191 Or App 222, 81 P3d 730 (2003) (*Johnson III*). Further, the department's decision is the one rendered by the authorized representative, not the one made by either the ALJ or the board. That is so because the ALJ and the board do not have the delegated authority to articulate policy through the interpretation of rules; they are reviewing bodies, not policy-making ones. *McPherson*, 285 Or at 546-47; *Johnson v. Employment Dept.*, 187 Or App 441, 446-47, 67 P3d 984 (2003) (*Johnson I*).

██     However, deference to the authorized representative is limited in scope. It encompasses legal issues but not questions of fact. Whether particular acts are or are not misconduct is rule interpretation, a legal question, and the representative's decision on that issue receives deference. Whether particular acts did or did not occur, and if so, how they occurred, are questions of fact, and we do not defer to the representative's findings. The representative's role as department spokesperson gives him or her no special expertise or authority in that realm. Indeed, the representative makes decisions on "the basis of the facts available," ORS 657.267, in contrast to the ALJ's decision, which occurs only

after a contested case hearing, ORS 657.270(3). In sum, then, in reviewing the board's decision that a claimant was or was not discharged for misconduct, we review the board's factual findings for substantial evidence, *Johnson II*, 189 Or App at 247, and its legal conclusion as a matter of law, with appropriate deference to the authorized representative. When the authorized representative makes a legal conclusion based on an incomplete factual record, there is, in essence, no legal interpretation for us to review; the authorized representative has not pronounced on the actual fact situation that the case presents. In such circumstances, we remand with instructions to determine the department's interpretation under an adequate factual record. *Johnson III*, 191 Or App at 224.

■ Here, the board found that, as a result of claimant's kick, H felt immediate pain and shock; that the pain worsened over time; that the kick was as hard as anything H had experienced "short of being kicked by a horse in the stomach"; that H had rectal and lower back pain as well as a bruise where his pelvis hit the cabinet; that H missed six days of work; and that the employer discharged claimant for assaulting his coworker. Those historical facts are supported by substantial evidence in the record; indeed, they are undisputed. Also supported by substantial evidence is the ultimate finding that claimant's behavior was "tantamount to illegal conduct, *i.e.*, assault."[1] Although the board reached its findings on the basis of a cold record and, in so doing, tacitly rejected an implicit credibility finding by the ALJ that H's testimony was unpersuasive, the board was entitled to do so; it exercises *de novo* review over decisions by the ALJ and is not required to give any weight to the ALJ's credibility findings. ORS 657.275(2).

Thus, the authorized representative's decision was based on an incomplete factual record. It found only that claimant was a 26-year employee of employer who kicked a coworker in the buttocks with the side of his foot and had "never done this before." The key facts were determined only

---

[1] ORS 163.160(1) provides, in part:

"A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another[.]"

subsequently, at the hearing before the ALJ. Ordinarily, then, we would remand with instructions to determine the department's interpretation of the relevant rules—that is, to determine whether the authorized representative would consider the facts, as ultimately found by the board and supported by substantial evidence, as amounting to misconduct. We would then review that determination and affirm unless it was implausible, that is, inconsistent with the rule's text, context, or any other source of law. *Don't Waste Oregon Com.*, 320 Or at 142. In this case, however, remand is not necessary. The facts as found by the board and supported by substantial evidence allow for only one conclusion: because claimant's conduct was tantamount to assault, which is unlawful conduct, any conclusion that it was merely poor judgment would be inconsistent with OAR 471-030-0038(1)(d)(D), under which a violation of law or conduct tantamount to such a violation is *per se* misconduct. We therefore affirm.

Affirmed.