Submitted May 3, 2012, reversed and remanded January 30, 2013

Suzanne G. FRANKLIN,
*Petitioner*,

*v.*

EMPLOYMENT DEPARTMENT
and Milwaukie Convalescent Hospital, Inc.,
*Respondents*.

Employment Appeals Board
11AB0569; A148253

294 P3d 554

Thomas K. Doyle filed the briefs for petitioner.

Peter D. Hawkes and Lane Powell, PC, filed the brief for respondent Milwaukie Convalescent Hospital, Inc.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Employment Department.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

DUNCAN, J.

## DUNCAN, J.

Claimant seeks review of a final order of the Employment Appeals Board (EAB) determining that she was discharged for "misconduct connected with work," ORS 657.176(2)(a), and, therefore, that she is not eligible for unemployment benefits. The EAB concluded that an on-the-job error that claimant made, which gave rise to a disciplinary proceeding against her by the Oregon State Board of Nursing (Board of Nursing), was not misconduct. However, it reasoned that claimant's negotiated resolution of that proceeding, in which she agreed to a temporary suspension of her nursing license, was misconduct. We review for substantial evidence, substantial reason, and errors of law, *Freeman v. Employment Dept.*, 195 Or App 417, 421, 98 P3d 402 (2004), and conclude that the EAB erred in its interpretation of the Employment Department's (department's) rule defining misconduct. Consequently, we reverse and remand.

An unemployment claimant "shall be disqualified from the receipt of benefits" if the claimant "[h]as been discharged for misconduct connected with work." ORS 657.176(2)(a). The employer bears the burden of showing that a claimant has been discharged for misconduct connected with work. *McDowell v. Employment Dept.*, 348 Or 605, 610 n 2, 236 P3d 722 (2010) ("Long-standing Court of Appeals decisions hold that * * * an employer has the burden of proving that a discharge was for misconduct."); *Babcock v. Employment Div.*, 25 Or App 661, 664, 550 P2d 1233 (1976) ("The burden of proving claimant's misconduct rests on the employer." (Internal quotation marks omitted.)).

Pursuant to authority delegated to it in ORS 657.610(4), the department has defined "misconduct" as follows:

"(a) As used in ORS 657.176(2)(a) and (b) a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct. An act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest is misconduct.

"(b)   Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct.

*"(c)   The willful or wantonly negligent failure to maintain a license, certification or other similar authority necessary to the performance of the occupation involved is misconduct, so long as such failure is reasonably attributable to the individual."*

OAR 471-030-0038(3) (emphasis added).

We take the facts, which are undisputed, from the EAB's order and the record. Claimant is a registered nurse who worked for employer from July 28, 2009 to December 1, 2010. In December 2009, claimant was on probation with the Board of Nursing for conduct unrelated to this case. On December 4, 2009, claimant misread a handwritten patient chart and, as a result, oversaw administration of a 1.0 ml dose of methadone instead of the prescribed 0.1 ml.[1]

Another nurse, reading the same chart, made the same mistake a few days later. That nurse discovered both her mistake and claimant's and reported the errors to employer. Employer suspended both nurses. Claimant filed for unemployment benefits for the period of her suspension, and, after a hearing, an administrative law judge (ALJ) concluded that claimant had not been suspended for misconduct because employer failed to prove that claimant's conduct was willful or wantonly negligent, as required by OAR 471-030-0038(3)(a).

In keeping with the terms of claimant's probation with the Board of Nursing, employer reported claimant's mistake to the Board of Nursing. After receiving the report, the Board of Nursing initiated a disciplinary investigation of claimant. The result of that investigation was that on November 2, 2010, claimant and the Board of Nursing agreed to a stipulated order. Claimant acknowledged that her medication error, as alleged in the order, constituted "conduct derogatory to the standards of nursing," *see* ORS 678.111(1)(f); OAR 851-045-0070, and agreed to a 60-day

---

[1] The patient was not harmed by the mistake.

suspension of her license and an extension of her probation.[2] The order noted that a nurse's "license may be revoked or suspended or the licensee may be placed on probation for a period specified by the Oregon State Board of Nursing and subject to such conditions as the Board may impose" for causes that include conduct derogatory to the standards of nursing. ORS 678.111(1)(f).

The order explained, "[claimant] wishes to cooperate with the Board in resolving the present disciplinary matter. Therefore, the [60-day suspension and extension of probation] will be proposed to the Board and is agreed to by [claimant]." It also provided, "[Claimant] understands that, by entering into this Stipulation, she waives the right to an administrative hearing under ORS 183.310 to 183.550."

On the day that claimant's license was suspended, employer terminated claimant's employment. Claimant applied for unemployment benefits, and the department concluded that employer had discharged claimant for "misconduct," ORS 657.176(2)(a), and, therefore, claimant was not eligible to receive unemployment benefits. Claimant requested an administrative hearing, and an ALJ affirmed the department's decision. That ALJ's conclusion rested on the premise that the conduct that gave rise to the stipulated order—the medication error that the first ALJ had concluded was *not* misconduct—was misconduct.

Claimant filed for review by the EAB. The EAB concluded that it was bound by the first ALJ's determination that claimant's medication error was not misconduct. Nevertheless, the EAB continued:

"[C]laimant and the ALJ overlook the fact that *claimant knowingly and voluntarily entered into the Stipulation, in which she agreed to the suspension of her registered nurse license, and waived her right to an administrative hearing.* Claimant knew that agreeing to the Stipulation would result in her license being suspended, effective December 1, 2010. Claimant's decision not to request an administrative hearing demonstrated her indifference to the consequences

---

[2] The stipulated order also stated that claimant had failed to obtain preapproval of her position with employer from the Board of Nursing, in violation of a term of her probation.

of her actions. Claimant's failure to maintain her registered nurse license was at best wantonly negligent, and reasonably attributable to claimant."

(Emphasis added.) As a result of its conclusion that claimant's entry into the stipulated order with the Board of Nursing was misconduct, the EAB concluded that claimant was not eligible for unemployment benefits. Claimant seeks review of the EAB's order.

Claimant argues that the EAB's interpretation of the department's definition of "misconduct" is erroneous as a matter of law because claimant's conduct in entering into a stipulated agreement with the Board of Nursing "[cannot] be divorced from" the medication error that caused the Board of Nursing to take disciplinary action against claimant. That is, claimant asserts that, in evaluating whether a claimant's conduct with respect to the loss of a license is "misconduct," the EAB may consider only the conduct that underlies the loss of license, not the claimant's resolution of a resulting disciplinary proceeding. In order to evaluate claimant's argument, we must interpret OAR 471-030-0038(3)(c) to ascertain whether employer proved that claimant's conduct amounted to a "failure to maintain a license."[3]

Before beginning our analysis, however, we turn to a question regarding our standard of review and the proper disposition of this case. Generally, we use "the same interpretive framework with respect to administrative rules that we use with respect to statutes." *Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 532, 185 P3d 446 (2008). That is, "[w]e begin by considering the text of the rule itself, together with its context, which includes other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes." *Id.* at 533.

When interpreting an administrative rule, we defer to any "plausible interpretation" by the agency that

---

[3] As mentioned, the EAB concluded that claimant's agreement to the stipulated order was "at best wantonly negligent." OAR 471-030-0038(3)(c) requires a "willful or wantonly negligent failure to maintain a license." Our conclusion that claimant's agreement to the stipulated order did not constitute a "failure to maintain a license" obviates the need to review the EAB's conclusion regarding claimant's mental state.

promulgated the rule. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994); *Johnson v. Employment Dept.*, 189 Or App 243, 248, 74 P3d 1159, *adh'd to as modified on recons*, 191 Or App 222, 81 P3d 730 (2003). A "plausible interpretation" is one that is not "inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law." *Don't Waste Oregon Com.*, 320 Or at 142.

Determination of whether a particular act constitutes "misconduct" under OAR 471-030-0038(3)(c) requires an interpretation of that rule. *Ring v. Employment Dept.*, 205 Or App 532, 536, 134 P3d 1096 (2006); *Jordan v. Employment Dept.*, 195 Or App 404, 409, 97 P3d 1273 (2004); *see also McPherson*, 285 Or 541, 550, 591 P2d 1381 (1979). However, the department, rather than the EAB, is the agency to which we defer: "[T]he ALJ and the [EAB] do not have the delegated authority to articulate policy through the interpretation of rules; they are reviewing bodies, not policy-making ones." *Ring*, 205 Or App at 536. The consequence of that arrangement is that we defer to the department's conclusion about whether particular conduct constitutes misconduct under the rule, but we do not defer to the EAB's conclusion.

Our deference to the department, however, is limited to its conclusions of law. As to the facts, the EAB reviews the record *de novo*. ORS 657.275(2). We review the EAB's findings for substantial evidence. *Freeman*, 195 Or App at 421. Thus, we are bound by the EAB's findings of fact that are supported by substantial evidence, but we defer to the department's legal conclusions as to whether certain facts constitute misconduct. As a result,

"[w]hen the [department] makes a legal conclusion based on an incomplete factual record, there is, in essence, no legal interpretation for us to review; the [department] has not pronounced on the actual fact situation that the case presents. In such circumstances, we remand with instructions to determine the department's interpretation under an adequate factual record."

*Ring*, 205 Or App at 537.

In this case, the department never concluded that claimant's conduct in resolving the disciplinary proceeding was misconduct apart from her medication error. Instead, only the EAB came to that conclusion. Consequently, "there is, in essence, no legal interpretation for us to review," *id.*; ordinarily, that would require remand.

However, there is an exception to that general rule: No remand is necessary where "[t]he facts as found by the [EAB] * * * allow for only one conclusion." *Id.* at 538 (concluding that no remand was necessary because the claimant's conduct was not an isolated instance of poor judgment where it "was tantamount to assault," which was misconduct under the department's rules); *see also Jordan*, 195 Or App at 410 (explaining that remand was not necessary where "any interpretation of departmental rules resulting in a conclusion that [the] claimant's conduct here was *not* misconduct would be implausible" (emphasis in original)). Here, the facts found by the EAB allow for only one conclusion: Claimant's agreement to the stipulated order was not misconduct because it did not amount to a "failure to maintain a license," OAR 471-030-0038(3)(c).

In reaching that conclusion, we need not address claimant's contention, noted above, that the EAB may consider only the underlying conduct that leads to a license suspension, and, correspondingly, that it may never consider a claimant's conduct in resolving a disciplinary proceeding against her. That is so because, on this record, claimant's agreement to the stipulated order cannot plausibly be understood to constitute a "failure to maintain a license" as that phrase is used in OAR 471-030-0038(3)(c).

As noted, employer bore the burden of proving that claimant's discharge was for "misconduct," *McDowell*, 348 Or at 610 n 2. Consequently, here, employer had to prove that claimant's agreement to the stipulated order constituted a failure to maintain her license. Employer failed to do so.

In defense of the EAB's reasoning, set out above, 254 Or App at 659, employer now states the following:

"[Claimant] voluntarily gave up her opportunity to argue that her underlying conduct did not amount to 'conduct

derogatory to the standards of nursing' in violation of ORS 678.111(1)(f) or, even if it did, that the State Board of Nursing should impose a lesser penalty than suspension or revocation of her license. To be sure, had [claimant] proceeded to an administrative hearing, a revocation or suspension of her license was a *possible* outcome. But by entering into the stipulation, she *guaranteed* that outcome through her own knowing and voluntary act."

(Emphasis in original; citation omitted.) That reasoning is not persuasive in light of employer's failure to show any reason for claimant to contest the proposed license suspension.

First, before the ALJ, employer conceded that claimant's underlying conduct—which included the medication error—violated the Nurse Practice Act, ORS 678.010 to 678.445. Therefore, employer may not dispute that the Board of Nursing had authority to suspend or revoke claimant's license. *See* ORS 678.111(1).

Second, employer produced no evidence indicating that, had claimant sought a hearing and challenged the Board of Nursing's proposed suspension of her license, she might have received a less severe sanction. Claimant's medication error violated the Nurse Practice Act and she was subject to discipline—including suspension or revocation of her license—by the Board of Nursing for that violation. No evidence suggests that there was any ground on which claimant could have resisted the Board of Nursing's discipline.

In sum, (1) the Board of Nursing could have suspended or revoked claimant's license regardless of her agreement to the stipulated order and (2) there is no evidence that it might have imposed a lesser penalty if claimant had insisted on fighting the discipline instead of agreeing to the stipulated order. Consequently, employer failed to carry its burden of proving that claimant was terminated for misconduct; it failed to prove that claimant's agreement to the stipulated order amounted to a "failure to maintain" her license. OAR 471-030-0038(3)(c). Indeed, it appears that her agreement was a reasonable attempt to mitigate the consequences of her medication error.

Any other interpretation of OAR 471-030-0038(3)(c) would be implausible because it would conflict with the statutory term "misconduct." It is beyond dispute that misconduct involves something improper or wrongful. *See, e.g., Bunnell v. Employment Division*, 304 Or 11, 17, 741 P2d 887 (1987) (noting that, in order to be misconduct, a claimant's conduct must be "more severe than poor judgment"); *Steele*, 143 Or App at 112-16 (citing numerous definitions of misconduct, all of which refer to wrongfulness or impropriety). It is because of that impropriety or wrongfulness that, unlike a discharge for other reasons, a discharge for misconduct makes an employee ineligible for unemployment benefits. *See Bunnell*, 304 Or at 17 (emphasizing the seriousness of "misconduct" and explaining that the test is "not whether the employer was entitled to discharge the employe, but rather whether a legally discharged employe is disqualified from unemployment compensation").

Here, employer simply did not show that claimant's conduct was improper or wrongful. It is undisputed that claimant's medication error constituted a violation of the Nurse Practice Act for which claimant was subject to discipline by the Board of Nursing. There is no evidence that claimant's agreement to the stipulated order caused anything more than the same (or less severe) disciplinary consequences that the Board of Nursing would have imposed had claimant sought a hearing.

Reversed and remanded.