Argued and submitted April 1, reversed and remanded June 8, petition for review denied November 23, 2022 (370 Or 471)

OCCUPATIONAL SAFETY
& HEALTH DIVISION,
*Petitioner,*

*v.*

LOY CLARK PIPELINE, CO.,
*Respondent.*

Workers' Compensation Board
1700028SH; A171747

514 P3d 544

In this review from a decision of the Workers' Compensation Board, the agency contests the board's determination that employer did not violate certain workplace safety rules related to an excavation in northwest Portland. About 30 days before the scheduled hearing, the administrative law judge (ALJ) rejected the agency's amendment to the workplace safety citation by concluding that the amendment would delay the hearing and that the amendment amounted to a new violation under applicable administrative rules. Among other things, the agency assigns error to the ALJ's decision to reject the amendment to the citation. *Held*: The ALJ erroneously interpreted the applicable rule related to the timing of amendments. Although an ALJ may set a schedule for a contested case, including limiting the timing of amendments, such limit must be communicated to the parties before an amendment is filed. Absent a different schedule communicated to the parties, an ALJ is without discretion to reject an amendment on timing grounds. As the agency's amendment in this case merely clarified the factual allegations it intended to prove at the hearing and did not change the time or place of the alleged violation, nor allege a violation of a different safety rule, the amendment did not constitute a new violation within the meaning of the rules.

Reversed and remanded.

Erin K. Galli, Assistant Attorney General, argued the cause for petitioner. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

James S. Anderson argued the cause for respondent. Also on the brief were George W. Goodman and Cummins, Goodman, Denley & Vickers, P. C.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed and remanded.

PAGÁN, J.

Petitioner, Oregon Occupational Safety and Health Administration (OR-OSHA) seeks review of a Workers' Compensation Board (WCB) order, following a hearing before an administrative law judge (ALJ), which concluded that OR-OSHA failed to establish a violation arising from an excavation in northwest Portland. OR-OSHA alleged that employer, Loy Clark Pipeline Company, failed to obtain "locates" for underground utilities prior to digging at a work site.[1] In October 2016, employer's workers struck an underground natural gas line, causing a leak and, eventually, a series of explosions.

OR-OSHA advances a number of arguments on review; however, as we conclude that OR-OSHA is correct that the ALJ erred by not allowing OR-OSHA's amendment to the citation prior to hearing, we write only to address that assignment of error. Our resolution of that issue obviates the need to address OR-OSHA's arguments related to the ALJ's order on reconsideration and the ALJ's determination that employer had complied with the applicable safety rules. We reverse and remand.

Although the relevant facts are largely procedural, to provide context, we briefly summarize the background facts giving rise to this review.

BACKGROUND

In 2016, employer was performing excavation and utility work at a construction site in northwest Portland, near the intersection of NW 23rd Avenue and NW Glisan Street, including installation of an underground conduit and a new power pole on the north side of NW Glisan. Employer obtained "locate" marks for the underground utilities in that area on July 12, 2016. A photograph in the appellate record taken around July 12 depicts a yellow dashed paint marking from the street, crossing the north sidewalk of NW

---

[1] "Locate" marks are color-coded marks that depict the approximate surface location for underground utilities. *See generally* OAR 952-001-0010(12) (defining "marks" to include "stakes, paint or other clearly identifiable material, to show the field location or absence of underground facilities at a proposed work site"); OAR 952-001-0070 (explaining marking for underground facilities).

Glisan, and ending at a natural gas meter on the side of a building. On July 19, employer's crew removed a portion of the sidewalk, excavated, and installed several power conduits, before later covering the opening with a temporary asphalt patch. Notably, the marks that were on the portion of sidewalk that was removed were lost and no new marks were made on the asphalt patch.

In September 2016, employer had a separate project on the south side of NW Glisan Street; that project was not related to the July project. Employer obtained locate marks for the south side project before excavation.

On October 19, 2016, employer started work on another project on the north side of the street—this time to install a junction box for a Comcast line—in the same area as the July excavation. The foreman for the October job had not been on the July job, so, although he was aware of previous excavations in the area, he did not know the specific details. No new locate marks were made for the October job. When the crew arrived, the marks from the July 12 utility locate were faint and faded, in particular the yellow marks that indicated natural gas lines. The foreman observed the work site, saw some of the locate marks, and thought he could see "what was going where." All three of employer's workers saw markings for underground gas lines near the excavation site, but none of them thought the line was running through the area to be excavated. Using saws and a backhoe, the workers removed a portion of the asphalt patch and concrete sidewalk. As the foreman was using the backhoe to remove gravel underneath the sidewalk, the backhoe caught a natural gas line, causing a leak. A number of explosions occurred as a result, injuring eight people and causing more than $17 million in property damage.

Afterward, the foreman and another worker saw a yellow locate mark on the street curb and another yellow mark on the street that indicated a one-inch natural gas line near the excavation. The foreman had parked the backhoe over the locates from the July 2016 job, and so he had not seen them that morning. He testified that, had he seen those marks, he would have known there was a natural gas line in the work area.

OR-OSHA investigated the incident and noted that after the locate marks were placed in July, employer excavated in the area, installed conduit, and closed the excavation with temporary asphalt. One OR-OSHA officer noted that part of the July locate marks had been removed during the July job and had not been replaced. An OR-OSHA manager noted that the yellow natural gas mark on the curb was faint.

After the investigation, OR-OSHA issued employer a citation for violating 29 CFR § 1926.651(b)(1), which requires:

> "The estimated location of utility installations, such as sewer, telephone, fuel, electric, water lines, or any other underground installations that reasonably may be expected to be encountered during excavation work, shall be determined prior to opening an excavation."

Under the statutory and regulatory authority created by the Oregon Safe Employment Act (OSEA), OR-OSHA "has promulgated rules setting safety and health standards for a vast range of workplaces and occupational activities."[2] *OR-OSHA v. United Parcel Service, Inc.*, 312 Or App 424, 432, 494 P3d 959 (2021). OAR 437-003-0001(16)(b) adopts 29 CFR § 1926.651 in full.

In the original citation proposing $4,900 in penalties, OR-OSHA alleged:

> "On October 19, 2016, the excavator operator struck a 1-inch steel natural gas line located at the northeast corner of NW Glisan at NW 23rd, causing an explosion in a nearby building and significant damage to other structures in the area. During this particular phase of the work, the employer did not obtain locates for the area in which the excavator damaged the 1-inch line. Locates had been done for other sections of the project."

Employer requested a hearing on the matter, and the parties engaged in discovery. About two years later, and approximately 30 days before the hearing was scheduled to take place, OR-OSHA filed an amendment to the citation. The amended citation alleged:

---

[2] "ORS 654.001 to 654.295, 654.412 to 654.423, 654.750 to 654.780 and 654.991 may be cited as the Oregon Safe Employment Act." ORS 654.001.

"On October 19, 2016, the employer's excavator operator struck a 1-inch steel natural gas line located underground near the northeast corner of NW Glisan at NW 23rd, which was a gas line that may reasonably have been expected to have been encountered. A resulting explosion occurred in a nearby building that caused significant damage to it and other structures in the area. During this particular phase of the work, prior to opening the excavation, the employer did not adequately determine through locates or other acceptable means the estimated location of the gas line that was damaged. Locates had been done for other sections of the project."

Employer moved to vacate the amended citation, arguing that "OR-OSHA decided that it had the right to unilaterally amend the citation in this case without first getting authorization from the forum," and that the amendment was "in essence, a brand new citation." According to employer, the statement of facts upon which the citation was based "constitute[d] a new and different manner in which Employer allegedly violated 29 CFR 1926.651(b)(1)," and the new citation was made well after the 180-day limit set out in ORS 654.071(3).

OR-OSHA responded that, under the applicable administrative rules, in particular, OAR 438-085-0526, OR-OSHA had the right to amend the citation until the date and time set for hearing, and that the amendment "simply describe[d] with more particularity [employer's] conduct, which OR-OSHA intends to prove at hearing."

The ALJ determined that the rule was "conditional," that is, "providing the ALJ with discretion to not allow such amendments." Moreover, the ALJ determined that the amendment "change[d] the nature of the employer's conduct," was "substantially different" from the original citation, and therefore was a "new" citation when compared to the original. The ALJ struck the amendment and proceeded to hearing on the original allegation.

A hearing was conducted and the ALJ ultimately dismissed the citation, having determined that employer had obtained locates prior to excavation. This petition for review followed the ALJ's order and later reconsideration. OR-OSHA raises three assignments of error. The first

issue relates to an amended order issued by the ALJ after OR-OSHA filed this petition for review. OR-OSHA argues that the ALJ did not have jurisdiction to issue an amended order after the petition for review was filed.[3] Second, OR-OSHA assigns error to the ALJ's determination that employer did not violate 29 CFR § 1926.651(b)(1). Finally, OR-OSHA assigns error to the ALJ's decision to strike the amended citation, requiring OR-OSHA to proceed at the hearing on the original citation. As noted above, because we conclude that the decision to strike the amended citation was error, we do not reach the merits of OR-OSHA's first and second assignments of error.

## ANALYSIS

On review, as framed by the parties, we must first consider what standard of review applies. OR-OSHA contends that a legal error standard of review applies to the ALJ's interpretation of OAR 438-085-0526. Employer contends that, because OAR 438-085-0526 is a rule promulgated by the WCB, the board, acting through the ALJ, interpreted the rule and such interpretation is entitled to deference if plausible and not contrary to law.

Courts are authorized to overrule an agency's interpretation of a rule if an agency has "erroneously interpreted a provision of law." ORS 183.482(8)(a). The relevant provisions of law may include administrative rules. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). When an agency's interpretation of a rule is "plausible" and not "inconsistent with the wording of the rule itself, or with the rule's context, or with any other sources of law," we defer to that interpretation. *Id.* However, that deference is owed only to the authority that promulgated the rule, not to interpretations made by those without policy-making authority. *Id.* at 142 n 8; *United Parcel Service*, 312 Or App at 442 (OR-OSHA's interpretation of federal rule that had been adopted by OR-OSHA was plausible and therefore entitled to deference); *Ring v. Employment Dept.*, 205 Or App 532, 536, 134 P3d 1096 (2006) (distinguishing department

---

[3] The parties do not dispute—and we agree—that this matter is properly before us. Given our disposition on the third assignment of error, the validity of the amended order is immaterial.

with policy making authority from ALJ without authority to articulate policy through interpretation of rules).

In any event, we need not decide whether the ALJ's interpretation of OAR 438-085-0526 would be entitled to deference, because we conclude that the interpretation is "inconsistent with the wording of the rule itself, or with the rule's context," and therefore, we would not defer to it. In interpreting an administrative rule, we begin with the text and context, just as we would for interpreting a statute. *United Parcel Service*, 312 Or App at 436. We may also consider the rule's adoption history. *Brand Energy Services, LLC v. OR-OSHA*, 261 Or App 210, 214, 323 P3d 356 (2014). We begin with the text.

OAR 438-085-0526 provides:

"(1)  Unless otherwise provided by the Administrative Law Judge, amendments to the citation and to the request for hearing, including affirmative defenses, shall be allowed up to the date and time set for hearing.

"(2)  An amendment made by OR-OSHA under this rule may not allege a new violation or increase a penalty.

"(3)  Amendments made in accordance with this rule are effective upon filing.

"(4)  If a party is prejudiced by the timing of the amendment, a postponement or continuance may be allowed."

The dispute in this review turns on the interpretation, first, of section (1) and, later, when considering if the amendment alleged a new violation, of section (2). The general structure of section (1) begins with an apparent exception to the general rule stated after the first clause. The use of the phrase "[u]nless otherwise provided" is commonly understood to signal some exception to a general rule. *See State v. Connally*, 339 Or 583, 590, 125 P3d 1254 (2005) (concluding that the phrase "[u]nless otherwise provided" meant an exception to the general rule); *see also Webster's Third New Int'l Dictionary* 2503 (unabridged ed 2002) ("unless**:** 1: under any other circumstance than that: except on the condition that"); *id.* at 1598 ("otherwise**:** 2: in different circumstances: under other conditions"). Unlike in many rules and statutes, where the exception points to other provisions, the

exception in this rule explains where "otherwise provided" comes from: the administrative law judge hearing the case. Thus, the ALJ may provide an exception to the general rule.

The general rule, in unambiguous terms, allows either side to amend the citation or the responsive pleadings, "up to the date and time set for hearing." For our analysis, the key idiom—"shall be allowed"—provides a limitation on the authority of the ALJ to disallow amendments to either the citation or responsive pleadings. *See Williams v. Philip Morris Inc.*, 344 Or 45, 59, 176 P3d 1255 (2008) (noting that in statutes "shall" generally indicates something is mandatory); *Webster's* at 2085 ("shall**:** 2b - used in laws, regulations, or directives to express what is mandatory"). The words and structure of the general rule in section (1) indicate that either side may file amendments, at any time after the citation is served or the request for hearing is made, up until the hearing commences. That general rule of section (1) addresses only the timing of when an amendment is allowed to be filed and places no substantive limitations on an amendment.

The location of the exception to the general rule within section (1), coupled with the narrow temporal limitation, provides insight as to what type of exception the ALJ may make—a limitation on when amendments may be filed. Given the mandatory language of the general rule governing when amendments are allowed, we are led to the logical conclusion that an ALJ may limit when amendments are allowed but must provide the parties guidance about those limitations in advance. That is to say that an ALJ may inform the parties that amendments must be served and filed at a time earlier than the "date and time set for hearing," but without having done so before an amendment is filed, the ALJ is without discretion, under section (1), to deny an amendment as untimely. We can conceive of no other meaning that harmonizes both the general rule and the exception contained in section (1). As in statutory construction, interpretation of a rule should give effect to each provision in it. *See, e.g.*, *Force v. Dept. of Rev.*, 350 Or 179, 190, 252 P3d 306 (2011) (statutory provisions interpreted to give effect to all); *Growing Green Panda v. Dept. of Human*

*Services*, 302 Or App 325, 332, 461 P3d 1026, *rev den*, 366 Or 552 (2020) (applying statutory construction framework to administrative rule). Accepting employer's argument that the ALJ has after-the-fact discretion to disallow amendments would alter the mandatory nature of the word "shall" in a manner that is inconsistent with our historical understanding of that term.

The contextual setting for OAR 438-085-0526 provides additional support for the likely meaning of section (1). Consider the remedy provision of section (4). That provision provides that the ALJ may, at the ALJ's discretion, postpone or continue a case "[i]f a party is prejudiced by the timing of the amendment." Similar language in another provision promulgated by the WCB has been construed as "a classic grant of discretion to the ALJ." *SAIF v. Kurcin*, 334 Or 399, 405, 50 P3d 1167 (2002) (discussing OAR 438-006-0091 which provides, in part that "[t]he Administrative Law Judge may continue a hearing for further proceedings"). It would be inconsistent to read the different language between sections (1), using the word "shall," and (4), using the word "may," pertaining to the ALJ to mean the same thing. Thus, an ALJ may remedy prejudice flowing from the timing of an amendment but may not, without previously setting a different schedule, deny the amendment solely on timing grounds.

Employer's contextual argument relies on a statement of policy contained in OAR 438-085-0805, which specifies that it "is the duty of the [ALJ] to conduct a fair and impartial hearing and to avoid delay." We fail to see how a general statement of duty for the ALJ can transform the mandatory language of OAR 438-085-0526(1) into a matter of discretion for the ALJ. That is particularly so when the duty imposed on the ALJ is understood in context of the broader policy expressed by the WCB in OAR 438-085-0017. That rule provides:

> "(1)  It is the policy of the Board to provide for the prompt and fair disposition of contested cases, encourage settlements, formal and informal, consistent with the purposes of the Act, and provide an impartial forum for hearings on cases that cannot be resolved between the parties.

"(2)   These rules shall be liberally construed to carry out the policy of the Board and the purposes of the Act."

The broader policy expressed by the WCB promotes the dual goals of both promptness and fairness in resolving contested cases through an impartial forum. Absent a policy statement that prioritizes promptness above other stated goals of either the WCB or the OSEA, we cannot read a general duty to avoid delay as overriding the words selected by the WCB and the context for the amendment rule.

As a consequence of the meaning of OAR 438-085-0526(1) in context, the ALJ's interpretation that it had discretion to reject OR-OSHA's amendment is inconsistent with the wording and context of the rule itself and therefore, implausible.[4] Absent a different schedule previously set by the ALJ, the ALJ erred by concluding that OR-OSHA's amendment could be rejected solely as a matter of ALJ discretion.

Turning to our analysis of OAR 438-085-0526(2) and whether the proposed amendment alleged a new violation, we return to the text. Section (2) provides that "[a]n amendment made by OR-OSHA under this rule may not allege a new violation or increase a penalty." The question on review is whether the ALJ erred by concluding that OR-OSHA's amendment to the factual allegations constituted a "new violation" within the meaning of the rule. The question whether an amendment constitutes a "new violation" is one of law that we review for legal error. *OR-OSHA v. A&B Sheet Metal Works, LLC*, 302 Or App 455, 458, 461 P3d 1094, *rev den*, 366 Or 760 (2020).

The term "new violation" is partially defined by other administrative rules applicable to contested cases under OSEA. "Violation" is defined to mean "[t]he breach of a person's duty to comply with an Oregon occupational safety or health law, rule or order." OAR 438-085-0026(26); *see also* OAR 437-001-0015(63). The consequence of that definition is that not all workplace accidents or injuries constitute a

---

[4] We reach the same conclusion whether or not we afford deference to the ALJ's interpretation. It follows that if an interpretation of a rule is implausible, the interpretation is also legal error, and would therefore require remedy regardless of what standard of review applied.

violation and, conversely, a violation can exist absent accident or injury. The relevant question reduces to whether a duty was imposed by "law, rule or order," and whether a person's actions or inactions breached that duty. Inherent in whether a person's actions or inactions breached a duty is a nexus to time, place, and circumstances of how the duty was breached. The administrative definition of "violation" implies that a discrete set of factual conditions is the relevant unit of measure to determine whether a violation has occurred.

"New" is not defined in the relevant statutes or rules, thus we assume a plain meaning, informed by, among other things, dictionary definitions. *See Growing Green Panda*, 302 Or App at 333-34. As used in the rule, "new" is an adjective modifying "violation." Likely definitions for "new," as an adjective, include "being other than the former or old: having freshly come into a new relation (as use, connection, or function) <turn a ~ leaf> <the ~ teacher> <a ~ product>" or "different or distinguished from a person, place, or thing of the same kind or name that has longer or previously existed <the ~ reservoir> <the ~ theology>." *Webster's* at 1522. Apparent from those definitions is a relative relationship between things being compared and a requirement that sufficient difference exists between the things for the latter to be considered "other than the former" or "different *** from *** that [which] previously existed."

The contextual setting for the definition of "violation" provides additional support to the inference that a particular set of factual conditions is the relevant measure for violations. *See* ORS 654.025(3)(c) (generally limiting instances when "a state of facts or condition constitutes a violation of more than one rule" to only one citation or one penalty). The legislature, in defining a "serious violation," set the unit of measurement as "a condition which exists, or *** one or more practices, means, methods, operations or processes which have been adopted or are in use." ORS 654.086(2). That definition of serious violation, focusing on a discrete set of facts or practices, adds considerable weight to the understanding that a discrete and logically related group of facts existing at a specific period in time is how a "violation" should be measured. *See also* ORS 654.071(2)(a)-(c)

(requiring that a citation contain information as to date and place, statement of facts, and reference to legal authority for alleged violation); *Assn. of Oregon Loggers v. Dept. of Ins. and Finance*, 130 Or App 594, 600-01, 883 P2d 859, *rev den*, 320 Or 493 (1994) (noting that ORS 654.025(3)(c) allows only one punishment for a single "incident" or "state of facts or condition" that may violate multiple rules).

The broader principles served by the "new violation" rule include maintaining the 180-day limitation on citations prescribed by statute, ORS 654.071(3), and preventing unfair prejudice to the employer. The unfair prejudice principle is animated by the need to provide an opportunity to prepare an adequate defense. *See, e.g.*, *Sachdev v. Oregon Medical Board*, 292 Or App 778, 785, 426 P3d 118 (2018) (discussing the Oregon Administrative Procedures Act (APA), in the context of disciplinary proceedings for medical professionals, and the contours of administrative notice requirements). Although, by its terms, the APA is not applicable to cases brought under OSEA, *see* ORS 183.315(1), cases interpreting parallel language are useful.

The citation notice requirement of OSEA, ORS 654.071(2), requires among other things, a "plain statement of facts upon which the citation is based," and a "reference to the law, regulation, rule, standard or order relied upon." The analogous APA provision, ORS 183.415(3), requires a "short and plain statement of the matters asserted or charged," and a "reference to the particular sections of the statutes and rules involved." In *Sachdev*, we interpreted the APA provision to require that a "notice of disciplinary action * * * refer to the statute or rule upon which it relies as a ground to impose discipline and must indicate which statutory ground the board [would actually] press at the contested case hearing." 292 Or App at 788. When an agency has alleged more than one statutory ground for discipline, the agency "may not rely only on factual allegations to notify the licensee of the statutory ground on which it will proceed." *Id.*; *see also Murphy v. Oregon Medical Board*, 270 Or App 621, 631, 348 P3d 1173 (2015) (notice did not provide adequate notice of statutory bases for discipline); *Villanueva v. Board of Psychologist Examiners*, 175 Or App 345, 358, 27 P3d 1100 (2001), *adh'd to on recons*, 179 Or App 134, 39 P3d 238 (2002)

(same). What *Sachdev*, *Murphy*, and *Villanueva* all imply is that, in assessing whether a notice complied with the statutory requirements, the importance of the factual conditions ("a short and plain statement") is somewhat attenuated when compared to the statutory basis for imposing discipline. To meet the statutory requirement for the statement of facts, it is sufficient to explain when and where the occurrence giving rise to discipline proceedings happened—the information about how the facts violated a particular duty is tied to the specific statutory basis portion of the notice. Stated in terms of what the notice provision protects, a party can reasonably understand the allegations against them when the notice provides reference to the "particular sections of statutes and rules involved" and factual detail about what factual occurrence an agency will pursue. *Sachdev*, 292 Or App at 793 (concluding that the notice provided sufficient facts, notably a specific date and circumstances, to constitute a plain statement of facts); *see also Murphy*, 270 Or App at 631 (reversing when board's conclusion was not based on legal theories alleged in notice). The ability for a party to understand, from the notice, the allegations against them is the gravamen to the ability to prepare a defense.

A proposed amendment that does not allege new operative facts or a violation of a different rule than originally cited should not impair a party's ability to understand the allegations against them or their ability to defend against those allegations. In those circumstances, it is error for an ALJ to conclude that the proposed amendment constituted a "new violation" under section (2).

Here, in both the original and amended citation, OR-OSHA alleged that employer violated only a single applicable safety rule. That rule imposes only the broad duty to "determine[ ] prior to opening an excavation" the "estimated location of utility installations." 29 CFR § 1926.651(b)(1). OR-OSHA originally alleged that employer "did not obtain the locates" of the gas lines prior to excavation. The amended citation alleged that employer failed to "adequately determine, through locates or other acceptable means, the estimated location" of the gas lines. OR-OSHA did not allege new operative facts or a different rule violation. To be sure, OR-OSHA's proposed amendment, as noted, changed some

of the details with respect to how the duty was breached. Importantly, OR-OSHA's amendment did not change what duty employer failed to meet, nor did it change when or where the breach occurred, and for those reasons, the amendment would not have impaired employer's ability to prepare a defense. OR-OSHA's amended citation rephrased what it had originally alleged: the actions employer took to ensure it was aware of the utility lines in place before excavating did not comply with the applicable rule. To the extent that "new violation" is shorthand for the requirements for notice—in furtherance of the interest in preparing a defense—discussed in *Sachdev*, OR-OSHA's amendment did not constitute an allegation of a new violation.[5] Employer struggles to identify what new discovery, witnesses, or expert testimony would be required if the amendment were allowed, and that difficulty is consistent with our conclusion that the amendment did not deprive employer of the ability to adequately prepare for its defense. In this situation, the ALJ erred in concluding that the proposed amendment alleged a new violation, because the amendment did not allege sufficiently different facts to constitute a "new violation" under the definition in the rules.

As we conclude that the ALJ impermissibly denied OR-OSHA's amendment to the citation, we need not address the other assignments of error raised by OR-OSHA. We note that whether OR-OSHA's interpretation of the adopted federal rule, 29 CFR § 1926.651(b)(1), was entitled to deference was, at the time of the administrative hearing, "an open question in Oregon." *A&B Sheet Metal Works*, 302 Or App at 463 n 1. Since the hearing, we have determined that we will defer to OR-OSHA's interpretation of an adopted federal rule "if it is plausible given the text and context [of the rule] and not inconsistent with any source of law." *United Parcel Service*, 312 Or App at 436. On remand, the ALJ may have an opportunity, in the first instance, to determine if

---

[5] In *Sachdev*, for instance, when determining that the Oregon Medical Board *failed* to provide adequate notice, we focused on the fact that the board had originally alleged that the doctor in question provided "substandard care" to patients but then proceeded on a theory that the doctor violated ORS 677.190(24) by prescribing a controlled substance without following the accepted procedures. 292 Or App at 794. We concluded "[n]othing in the allegation could be reasonably understood to convey that the board would proceed on [that] ground." *Id.*

OR-OSHA's interpretation of 29 CFR § 1926.651(b)(1) is entitled to such deference.

Reversed and remanded.